VIRGINIA:

BEFORE THE VIRGINIA STATE BAR DISCIPLINARY BOARD

IN THE MATTER OF  　　　　　　　　　　　　　　VSB DOCKET NO. 24-053-129413
BOBAK KAVEH PERSIS

## MEMORANDUM ORDER OF SUSPENSION

**THIS MATTER** came to be heard on August 23, 2024, before a panel of the Disciplinary Board (the "Board"), consisting of Alison G. M. Martin, Second Vice Chair, Adam M. Carroll, Yvonne S. Gibney, Michael C. Moore, and Elisabeth Martingayle, Lay Member. The Chair polled the members of the panel as to whether any of them was conscious of any personal or financial interest or bias which would preclude any of them from fairly hearing this matter and serving on the panel, to which inquiry each member responded in the negative.

The Virginia State Bar (the "VSB") was represented by Elizabeth K. Shoenfeld, Sr. Asst. Bar Counsel and Bobak Kaveh Persis (the "Respondent") appeared in person and was represented by James M. McCauley. Lisa A. Wright, court reporter, Chandler and Halasz Stenographic Reporters, P.O. Box 1975, Mechanicsville, Virginia 23116, telephone number: (804) 730-1222, after being duly sworn, reported the hearing and transcribed the proceedings.

All legal notices of the date and place were timely sent by the Clerk of the Disciplinary System ("Clerk") in the manner prescribed by Part Six, Section IV, Paragraph 13-18 of the Rules of the Supreme Court of Virginia (the "Rules").

The matter came before the Board on the Subcommittee Determination (Certification) of the Fifth District, Section III Subcommittee of the Virginia State Bar, pursuant to Part 6, Section IV, Paragraph 13-18 of the Rules involving misconduct charges against the Respondent.

1

Prior to the hearing before the Board at the Prehearing Conference on August 14, 2024, VSB Exhibits 1-38 were admitted into evidence by the Chair, without objection from the Respondent; Respondent's Exhibits 17 and 18 were admitted into evidence; and in response to an objection from the VSB, Respondent's Exhibits 1-16 were not admitted during the misconduct phase, but were admitted for the sanctions phase, if necessary, only. The parties' stipulations were also made part of the record.

At the outset of the hearing the parties further stipulated that Respondent committed the misconduct alleged by the VSB and, specifically, that Respondent had violated Rules 8.4(b) and 8.4(c). Based on the stipulations, admitted exhibits, and representations of counsel, the evidence presented during the misconduct phase of the hearing was limited to the testimony of the Complainant, Joseph DiPietro ("DiPietro"), who was sworn under oath.

Following the presentation of the evidence and arguments of counsel, the Board met in private to consider its decision.

## I. FINDINGS OF FACT

The Board makes the following findings of fact on the basis of clear and convincing evidence:

1. In 2019, 2020, and 2021, Respondent took and failed the Virginia bar exam three times. He ultimately passed the Virginia bar exam and was licensed to practice on April 22, 2022. *See* VSB Exhibit 3.

2. On October 4, 2021, while unlicensed, Respondent applied for the position "Associate Attorney at DiPietro Law Group" via an email directed to DiPietro. Respondent provided his resume (VSB Exhibit 21) to DiPietro in furtherance of his application for the position.

3. The resume Respondent submitted to DiPietro included the statement "(VA. Bar)" next to

2

Respondent's name. At this time, however, Respondent had not passed the Virginia bar exam and, accordingly, was not admitted to practice law in Virginia.

4. Under the "Professional Experience" section, Respondent's resume stated he had worked as an "Associate Attorney at Desai Maruszki," a law firm in Toronto, Canada, between August 2019 and September 2021. *See* VSB Exhibit 21. During that period of time, however, Respondent was unemployed, as he had not passed the bar exam. Nevertheless, Respondent's resume described job responsibilities in the fabricated position with Desai Maruszki as including drafting pleadings, negotiating with opposing counsel, and taking depositions. Apparently, DiPietro did not contact Desai Maruszki to verify the representations in Respondent's resume.

5. In an October 5, 2021, email exchange, when DiPietro asked Respondent where he was licensed to practice law, Respondent lied, replying, "Virginia." *See* VSB Exhibit 19.

6. At no time between his date of hire in October 2021 and the termination of his employment in July 2023, did Respondent admit to DiPietro that he had been hired without a law license and worked for DiPietro without a law license for six months.

7. After accepting employment with DiPietro's firm as an Associate, despite not being licensed, Respondent used "Esq."[1] after his name in his email signature block. *See* VSB Exhibit 23. The firm provided him with business cards that identified him as an "Associate" and listed him on the firm website as an "Associate," a job title Respondent never questioned or corrected. *See* VSB Exhibit 35.

8. On several occasions during Respondent's employment, DiPietro encountered situations causing him to question Respondent's bar admission status, but Respondent successfully concocted explanations that apparently satisfied DiPietro.

---

[1] "Esquire" or "Esq." is commonly used and recognized in the United States to indicate that an individual is an attorney.

3

9. On April 22, 2022,[2] the Virginia Board of Bar Examiners ("VBBE") emailed Respondent to inform him that he had passed the February 2022 Virginia bar exam and advised him of the additional steps required before he would be authorized to practice law in Virginia. *See* VSB Exhibit 26.

10. When the VSB posted on its website the list of attorneys who had passed the February 2022 bar exam, DiPietro accessed the list to confirm whether another firm employee who had taken the bar exam had passed. DiPietro discovered Respondent's name there and questioned Respondent about it. Respondent lied to DiPietro and said that he had been licensed in 2019 but had not been eligible to be sworn in until recently because his law school had not released his transcript due to amounts Respondent had owed the school.

11. When DiPietro insisted that Respondent produce documentation of his licensure, Respondent sent him an email, dated May 13, 2022, which appeared to forward an email that purported to be from the VBBE to Respondent, stating that Respondent's "registration has been processed." The purported email from the VBBE also provided his Bar ID number. *See* VSB Exhibit 27. Later that same afternoon, Respondent sent a second email to DiPietro, which also appeared to forward an email that purported to be from the VBBE, that stated:

> You passed the July 2019 Virginia bar exam. We received your transcript from Georgetown University Law Center and you were licensed on November 10, 2021.
>
> However you still need to complete the oath card and return it to the Supreme Court of Virginia for an in-person admission on June 8, 2022.

*See* VSB Exhibit 29. Both emails were fabricated by the Respondent, but DiPietro believed them to be genuine.

---

[2] In reaching its decision, the Board relied only on Respondent's conduct that occurred after he was admitted to practice, i.e., April 22, 2022. To place that misconduct into context, however, the Board has included in its factual findings conduct by the Respondent that pre-dates his admission to practice but is relevant to his later misconduct.

12. In July of 2023, DiPietro asked his office manager to contact the VBBE to verify Respondent's bar admission information for enrollment on the firm's malpractice insurance coverage. The VBBE informed the office manager that Respondent had passed the February 2022 bar exam – not the July 2019 bar exam – and the VBBE also confirmed that it had not sent the emails that Respondent incorporated into his May 13, 2022 emails to DiPietro (VSB Exhibits 27 and 29).

13. On July 14, 2023, DiPietro confronted Respondent with the information obtained from the VBBE. DiPietro terminated Respondent's employment immediately and reported the matter to the VSB. *See* VSB Exhibit 30.

## II.  NATURE OF MISCONDUCT

The following conduct by Respondent was found by clear and convincing evidence to constitute misconduct in violation of the Rules of Professional Conduct:

After having been admitted to practice law in Virginia, Respondent

(1) orally misrepresented to his employer the date that Respondent had been licensed to practice law;

(2) fabricated two emails that purported to be from the VBBE that falsely represented when Respondent had passed the bar exam;

(3) provided the fabricated emails to his employer as documentation that he had passed the July 2019 bar exam, when he had not; and

(4) failed to correct these misrepresentations until his employer confronted him with the accurate information his employer obtained from the VBBE.

These deliberately wrongful acts reflect adversely on Respondent's honesty, trustworthiness, and fitness to practice law and is conduct that involved dishonesty, fraud, deceit or

misrepresentations that reflects adversely on Respondent's honesty, trustworthiness or fitness to practice law in violation of Rule 8.4 (b) and (c), as set forth below:

> **Rule 8.4      Misconduct**
>
> **It is professional misconduct for a lawyer to:**
>
> …
>
> **(b) commit a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law;**
>
> **(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation which reflects adversely on the lawyer's fitness to practice law[.]**

### III. IMPOSITION OF SANCTION

Thereafter, the Board received further evidence and argument as to the appropriate sanction to be imposed, including aggravating and mitigating factors. The Board received and admitted Respondent's disciplinary record (VSB Exhibit 39), which reflected no prior discipline history. The Board also admitted Respondent's Exhibits 1-16, VSB Exhibit 40, and heard testimony from the following witnesses: DaVida Davis, Alan Bowden, Tracy Meyer, and Respondent.

The Director of Regulatory Compliance for the VSB, DaVida Davis, confirmed that VSB Exhibit 38 is the email the VSB sent to Respondent on April 27, 2022, to acknowledge his registration as a new attorney and inform him of his Bar ID number. The VSB notifies new attorneys of their registration and Bar ID numbers through emails like Exhibit 38. The VBBE does not send such notifications to new attorneys. Thus, the purported email from "no-reply@barexam.virginia.gov" contained in VSB Exhibit 27, the email Respondent forwarded to DiPietro on May 13, 2022, was a fabrication.

Less than two weeks after his termination from DiPietro's law firm, the Respondent applied for an Associate Attorney position with Meyer & Bowden, in Stafford, Virginia. The resume Respondent submitted to that firm in July 2023 misrepresented Respondent's experience. In it he claimed to have worked as an Associate Attorney with the firm Desai Maruszki in Toronto, Canada between August 2019 and September 2021. *See* VSB Exhibit 40. At that time, Respondent was, in fact, unemployed because he had not passed the Virginia bar exam or any other bar exam. Despite having no law license until April 2022, Respondent's resume described his fabricated job at Desai Maruszki to include drafting pleadings, engaging in negotiations and settlements, and taking depositions, among other responsibilities. His accompanying cover letter amplified his misrepresentation further by claiming to have "more than five (5) years of litigation experience." *Id.*

Alan Bowden has been a member of the Virginia State Bar since 1998 and is a partner in the firm Meyer & Bowden, PLLC. His firm is Respondent's current employer. Bowden received and reviewed VSB Exhibit 40, Respondent's cover letter and resume, but did not verify Respondent's past employment. Respondent began employment with Bowden's firm, working mostly with his partner, Tracy Meyer, in early August 2023.

Bowden learned of DiPietro's bar complaint against Respondent in May or June of 2024, when a potential firm client brought it to the firm's attention. The potential client had researched Respondent before the client was scheduled for an initial meeting with Respondent. Through that research the potential client was able to access VSB Exhibit 1, the Certification, which detailed the misconduct allegations against Respondent. Bowden and Meyer confronted Respondent about the Certification. In his response to their questions, Respondent shared some personal and financial circumstances he had been experiencing. Initially, Bowden intended to terminate

Respondent but after further consideration and discussion with his partner, and further discussion with Respondent about his personal matters, Bowden and his partner decided against termination and allowed Respondent to remain employed pending the outcome of the Board hearing. The firm website does not reflect that Respondent is employed there, however.

Because of an attorney shortage where the firm's offices are located, Bowden believes it would be difficult to replace Respondent. Bowden states that Respondent is a good and hard worker, that his work has been "fantastic," and that Bowden trusts Respondent. Bowden hopes that Respondent will be able to continue to practice law at his law firm.

Tracy Meyer has been a member of the Virginia State Bar since 1996 and is a partner in the firm Meyer & Bowden, PLLC. She works closely with Respondent in her office. She was shocked to learn about the bar complaint against Respondent and discussed it with her partner at length. When they met with the Respondent about the Certification, Respondent expressed hope that the Board would understand his personal circumstances and give him no more than a reprimand.

Meyer is familiar with the Certification and, after working with Respondent for a year, she believes the Certification is not consistent with Respondent's character. Respondent admitted his misconduct when they confronted him about it, was tearful and remorseful, and Meyer trusts him fully. She wants him to continue to practice and she believes his actions were driven by extraordinary personal circumstances, rather than deceitful or dishonest motives. She believes the profession is better with him and that, due to his immigration status, he is not able to earn a living unless he is a practicing lawyer.

Respondent was born in Tehran, Iran, emigrated to Canada under a student visa in 2003, and became a Canadian citizen in 2006. In 2016, Respondent sold his condominium in Canada for about $550,000 and enrolled at Washington & Lee School of Law, which had awarded him a

8

scholarship. Respondent lived off savings and the proceeds of the sale of his condominium to attend law school and support himself and young family. In 2017, his father was diagnosed with Parkinsons Disease and required medical treatment, for which Respondent assumed financial responsibility, amounting to about $60,000. By the time he completed law school in 2019, Respondent's money was gone, and he was borrowing from friends. He still owed nearly $60,000 to Georgetown Law Center, which he had attended during his third year of law school, but he was unable to repay this amount until January 2020. *See* Respondent's Exhibit 16.

On May 23, 2019, Respondent was issued a TN visa, which required him to have pre-arranged employment as a lawyer in the United States and to be "qualified to practice in the profession." *See* Respondent's Exhibit 8. Respondent claims that a law firm in Clifton, Virginia – Fullerton & Knowles – had extended him an offer of employment that he relied on as the "pre-arranged employment" for his TN visa application. Employment with Fullerton & Knowles does not appear in either version of Respondent's resume, however. *See* VSB Exhibits 21 and 40.

Respondent's wife experienced some medical issues that culminated in November of 2019, with hospitalization for a stroke. She could not care for herself; was unable to walk or drive; had significant difficulty with memory; and could not care for their child. These symptoms lasted for about 18 months. During this time, they had no insurance, no employment, no money for bills, and no money for follow-up medical appointments.

Respondent felt desperate to find work during this time and was borrowing funds from his sister. The job applications he made during this time were unsuccessful because was not licensed.

In October 2021, Respondent responded to a job posting for the position with DiPietro's firm. When Respondent applied for the position with DiPietro Respondent was "at the end of [his] rope," "out of money," and had received eviction notices. He submitted a resume (VSB Exhibit 21) and

9

a cover letter. Respondent claimed that he included the notation "(VA. Bar)" next to his name on the resume to indicate that his bar status was "conditional." He also claimed he did this because he was confident that he would pass the July 2021 bar exam. Nevertheless, when questioned by the Board, he could not satisfactorily explain why he used the same notation on the version of his resume he provided to Meyer & Bowden in 2023 (VSB Exhibit 40), well after he had passed the bar exam and had been admitted to practice.[3]

In or around December of 2021, Respondent learned he had not passed the July 2021 bar exam. He chose not to tell DiPietro, who believed that Respondent was already admitted in Virginia because Respondent had said he was. *See* VSB Exhibit 19. Rather than come clean with the truth that he was practicing in DiPietro's firm without a law license, Respondent claims he told DiPietro that he had been admitted in 2019 but had not yet been sworn in,[4] which meant he could not sign pleadings or go to court. He contends he never signed pleadings or went to court while he remained unlicensed. He did, however, accept the compensation of an Associate.

Respondent worked long hours while with DiPietro's firm, often working weekends and holidays. He recalls working 297 hours in one month and that his total hours were not much less in other months. By the time Respondent was hired by DiPietro, Respondent's wife's medical issues had resolved enough that she could care for their child and was able to drive.

While employed with DiPietro, Respondent claims he lived paycheck-to-paycheck and had $11,100 in medical bills, rent, household expenses, $20,000 in credit card debt, and car payments for two cars, one of which was a BMW.

---

[3] Respondent told the Board that he had forgotten to update that part of his resume, which was clearly untrue since he had updated it by adding "& the Eastern District of Virginia" after the words "Va. Bar."

[4] The Board found this claim to lack credibility. DiPietro explained that it was not until March 1, 2022, when DiPietro asked Respondent for his bar ID number, that Respondent told DiPietro he had not yet been sworn in. *See* VSB Exhibit 24.

## IV.  DISPOSITION

After considering the exhibits, testimony, and argument, the Board was guided by Standard 7.1 of the Annotated Standards for Imposing Lawyer Sanctions, Second Edition (ABA 2019), which provides that "[d]isbarment is generally appropriate when the lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes injury or potential injury to a client, the public, or the legal system."  The evidence demonstrated that the Respondent deliberately misrepresented his qualifications in order to secure employment for himself in 2021 and in 2023, and that he continued to misrepresent his qualifications throughout his employment with DiPietro when it benefitted him.  Respondent's misrepresentations enabled him to hold a job he was not qualified to hold, placing his employer at risk of enabling the unauthorized practice of law, potentially injuring the public, including his employer's clients.

In its determination of an appropriate sanction, the Board also considered the following aggravating factors:

    a. Respondent's dishonest and selfish motive to misrepresent the date he was licensed in Virginia and to misrepresent in his resume and cover letter his prior employment experience; and

    b. Respondent's pattern of misconduct in which he fabricated two emails from the VBBE and presented them to DiPietro to cover up his previous misrepresentations, he presented a resume and cover letter to Meyer & Bowden that falsely claimed he possessed over five years of litigation experience and that he had been employed between August 2019 and September 2021 as an Associate Attorney for a firm in Toronto, and he failed to correct any of these misrepresentations.

Although Respondent stipulated to the alleged misconduct and wrote a lengthy answer to the Certification in which he admitted to many of his misrepresentations and expressed remorse, Respondent's continued resort to misrepresentation, including his testimony in the Board hearing, undermines the significance of his contrition. Accordingly, the Board considered his statements of remorse and acknowledgment of wrongdoing to be neither aggravating nor mitigating.

The Board also gave consideration to the following mitigating factors:

    a. Respondent's lack of a prior disciplinary history, although this factor received little weight given Respondent's repeated acts of deception before being licensed to practice law;

    b. Respondent's various personal issues, which the Board found provided little justification for his repeated acts of misrepresentation and deception;

    c. Respondent's lack of experience in the practice of law, which the Board found not to be significant because Respondent's misconduct did not relate to the performance of legal work but instead, his misconduct reflected the values that guide his ethical decisions and behaviors; and

    d. Respondent's character and reputation, as viewed by his current employers.

After due deliberation, the Board reconvened in open session and announced that Respondent's license to practice law in the Commonwealth of Virginia is SUSPENDED for a period of THREE YEARS, effective August 23, 2024.

It is further ORDERED that, as directed in the Board's August 23, 2024, Summary Order in this matter, Respondent must comply with the requirements of Part 6, Section IV, Paragraph 13-29 of the Rules. The Respondent shall forthwith give notice by certified mail, of the THREE-YEAR SUSPENSION of his license to practice law in the Commonwealth of Virginia to all clients

for whom he is currently handling matters and to all opposing Attorneys and presiding Judges in pending litigation. The Respondent shall also make appropriate arrangements for the disposition of matters then in his care in conformity with the wishes of his client. Respondent shall give such notice immediately and in no event later than 14 days of the effective date of the Suspension, August 23, 2024, and make such arrangements as are required herein as soon as is practicable and in no event later than 45 days of the effective date of the Suspension. The Respondent shall also furnish proof to the Clerk of the Disciplinary System within 60 days of the effective date of the Suspension that such notices have been timely given and such arrangements have been made for the disposition of matters.

It is further ORDERED that if the Respondent is not handling any client matters on the effective date of his Suspension, August 23, 2024, he shall submit an affidavit to that effect to the Clerk of the Disciplinary System within 60 days of the effective day of the Suspension. The Board shall decide all issues concerning the adequacy of the notice and arrangements required herein. The burden of proof shall be on the Respondent to show compliance. If the Respondent fails to show compliance, the Board may impose a sanction of Revocation or additional Suspension for failure to comply with the requirements of subparagraph 13-29.

It is further ORDERED that pursuant to Part 6, Section IV, Paragraph 13-9.E of the Rules, the Clerk of the Disciplinary System shall assess all costs against the Respondent.

It is further ORDERED that an attested copy of this Order be mailed by the Clerk of the Disciplinary System to the Respondent by electronic, first-class and certified mail, return receipt requested, to his address of record with the Virginia State Bar: 710 12th Street S, Apt 1919, Arlington, VA 22202-4467, and a copy by electronic mail to James M. McCauley, Respondent's Counsel, and to Elizabeth K. Shoenfeld, Sr. Asst. Bar Counsel.

ENTERED this \_\_17th\_\_ day of October 2024.

VIRGINIA STATE BAR DISCIPLINARY BOARD

_____
Alison G. M. Martin, Second Vice Chair